Bernard Ryan, P. J.
Claimants, as tenants in common, were the owner's by inheritance of industrial property in the city of Lockport, part o'f which was appropriated by the State of New York in a grade crossing elimination proceeding. Copies of the appropriation map were served upon the several claimants in February and March, 1950, the claim was filed February 11, 1952 and the trial took place May 27 and 28, 1952. The stenographer’s minutes of trial were transcribed and filed October 10, 1952, the Attorney-General’s requests to find were submitted December 12, 1952, the time for claimants’ attorney to submit requests was extended to March 9,1953, but no requests to find were ever submitted by him and no brief was ever submitted to the trial court by him. Under date of April 10, 1953, the court rendered its decision awarding to the claimants the sum of $25,990, together with interest thereon from January 12, 1950, the date of the filing in the Niagara County Clerk’s office of the appropriation map, to September 13, 1950, six months from the date of service on the last claimant to be served (Court of Claims Act, § 10, subd. 1; § 19) and with further interest thereon from February 11,1952 to the date of entry of judgment. The judgment was not entered until March 9, 1954 and thereafter and under date of March 24, 1954, the Attorney-G-eneral on behalf of the State appealed to the Appellate Division, Fourth Department, which, under date of October 26, 1955, unanimously affirmed the decision, with costs (Rapp v. State of New York, 286 App. Div. 1062). Under date of December 5, *721 1955, the Attorney-Q-eneral issued certificate of no further appeal in the matter. The amount of the judgment including interest as affirmed by the Appellate Division is the sum of $28,135.62 plus the sum of $110.40 costs and disbursements, of which $50.40 is the printer’s bill for printing the claimants’ brief on appeal.
After this lapse of time the court is now asked to fix and determine the value of the services of the attorney for the claimants and to impress upon the judgment a lien therefor. This we believe we have the authority to do pursuant to section 475 of the Judiciary Law and according to precedent. (Butler v. State of New York, 180 Misc. 127 [1943]; Dunn v. State of New York, 269 App. Div. 1002 [1945]; Nephew v. State of New York, 179 Misc. 124 [1942].) Such an application is perhaps unusual where all of the parties are of full age, are competent and none appears in a representative capacity. But since it appears that the attorney had no agreement with his clients as to what his fee for the prosecution and the trial of their claim would be nor for the defense of the appeal from the judgment and it further appearing that attempts to resolve the differences of opinion between the attorney and his clients have been unsuccessful, including the opportunity for conference between them afforded by the court upon the return day of the motion herein, and since all of the parties have appeared upon the return day, except one who is absent in Europe in the armed services of the United States and one who resides more than 100 miles from the place of venue, both of whom have signed and acknowledged written consents that the court may determine the fee, we proceed to a consideration of the matter.
It cannot be doubted that the attorney herein has rendered valuable services. Preparation for and the trial of an appropriation case in the Court of Claims requires both skill and diligence, especially where, as in this case, the issue of damages consequential upon the taking by the sovereign is stoutly disputed, not only with respect to the value of such damages but also upon the point of the legality of any assessment of such nature. The grade crossing elimination cases present a specialized field of practice as the decisions published in the law reports since the enactment of legislation in 1928 disclose. In this respect the attorney for the claimants has been successful not only before the trial court but in securing unanimous affirmance by the appellate court as well. Moreover, it now appears that the award of damages herein by the trial court, which was sustained upon appeal, is greatly in excess of any offer of compromise made by the representatives of the State of New *722 York prior to trial. This court is always glad to foster and encourage negotiations for compromise in appropriation cases prior to the trial, as it did in this case when it afforded opposing counsel ample opportunity for adjustment before any testimony was taken. At the same time this court is ever careful to have its ears closed to any suggestion of figures mentioned in such talks or negotiations. Until the affidavits were presented upon this motion the court was not made aware of any sums mentioned by the parties. By such affidavits the court is now informed, and there is no statement to the contrary, that prior to the filing of the claim herein the only bona fide offer made by these representatives of the State who are charged with procuring rights of way, to the claimants, was the sum of $2,500. The court is further informed that on the morning of the opening of the trial the deputy attorney-general defending the claim stated that he would recommend to the Department of Public Works an offer of $14,000, that he did so by long distance telephone but that approval thereof was refused by the department.
The judgment with interest now amounts to about $30,000. The claimants’ attorney asks for a fee herein of $10,000. That is substantially one third of the total recovery. Such a sum we believe to be too high. This is not an action to recover for personal injuries, in which counsel was retained on a contingent basis. The claimants were the owners in fee of real property appropriated by the State. The award of this court stands in place of and represents the value of the property taken from them and the value of injuries sustained by the remaining freehold. While there may be precedent for a contingent fee in a personal injury action for an amount equal to one third of the recovery we are of the opinion that such a percentage upon the award in a case of this nature wuuld be an excessive fee.
As stated, all of the claimants, except two who had waived in writing, appeared before the court upon the return day of the order to show cause. The court absented himself and afforded the claimants an opportunity for free discussion with their attorney. No compromise was reached. Subsequently the court received from those who had been present at chambers a signed but undated and unverified document suggesting that the attorney’s fee be fixed at $5,000. We believe that such a sum would be inadequate compensation.
To resolve a dispute between attorney and clients is not one of the more pleasurable judicial duties. Especially where there are several branches of a family involved it is doubtful if everyone can be satisfied. However, it is a duty which cannot be shirked and we accept the responsibility accordingly. We believe *723 that an allowance herein of the amount of $8,000, together with the costs and disbursements taxed by the Appellate Division to be fair and reasonable. Upon this must be credited the sum of $200 which, according to the attorney’s petition, he received under date of November 29,1950. An order may be drawn and entered accordingly, fixing and determining the lien at the net amount and directing the Comptroller of the State of New York to pay such sum to the petitioner out of the moneys due to claimants pursuant to the judgment outstanding and upon such payment satisfying the said judgment to the extent of the amount so paid.